IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | Criminal No.   5:18-CR-*353* (**FJS**) |
| ) | |
| **v.** ) | **Indictment** |
| ) | |
| **DAQUAN DOWDELL, AKA** ) | Violation:   18 U.S.C. § 1962(d) |
| **"CANNON,"** ) | (RICO Conspiracy) |
| **ANTHONY HOPPER, AKA "A-DOG,"** ) | |
| **JAVON PETERSON, AKA "BLAZE,"** ) | 1 Count |
| **DAVON SULLIVAN, AKA "LIL** ) | |
| **SQUEEZE,"** ) | |
| **JAMAR LONG, AKA "SPANKY,"** ) | |
| **DESHAWNTE WALLER,** ) | |
| **SHAQUILLE BRELAND, AKA** ) | |
| **"SHAQ,"** ) | |
| **REDDELL SMITH, AKA "RENNY,"** ) | |
| **RASHAWN WYNN, AKA "WORMY,"** ) | |
| **QUALIK VAUGHN, AKA "Q,"** ) | |
| **TERRY LINEN, AKA "SIX,"** ) | |
| **JASON LEBRON, AKA "RILLA,"** ) | |
| **KEMNORRIS KINSEY, AKA "PEP,"** ) | |
| **and DAMANI PRINCE** ) | |
| ) | |
| **Defendants.** ) | County of Offense:   Onondaga |

## THE GRAND JURY CHARGES:

### COUNT 1
[RICO Conspiracy]

### THE ENTERPRISE

1.     At all times relevant to this Indictment, the Defendants **DAQUAN DOWDELL** aka **"CANNON," ANTHONY HOPPER, aka "A-DOG," JAVON PETERSON, aka "BLAZE," DAVON SULLIVAN, aka "LIL SQUEEZE," JAMAR LONG, aka "SPANKY," DESHAWNTE WALLER, SHAQUILLE BRELAND, aka "SHAQ," REDDELL SMITH, aka "RENNY," RASHAWN WYNN, aka "WORMY," QUALIK VAUGHN, aka "Q," TERRY LINEN, aka "SIX," JASON LEBRON, aka "RILLA," KEMNORRIS KINSEY, aka**

**"PEP," DAMANI PRINCE,** and others were members and associates of a criminal organization in Syracuse, New York, known as the "110 Gang," whose members and associates engaged in acts involving murder, robbery, drug trafficking and credit card fraud, within the Northern District of New York and elsewhere.

2.      The 110 Gang, including its leadership, members, and associates, constituted an "enterprise" as defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact.  The enterprise was engaged in, and its activities affected, interstate and foreign commerce.  The enterprise was an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

## PURPOSES OF THE ENTERPRISE

3.      The purposes of the 110 Gang included, but were not limited to, the following:

      a.  Enriching the members of the 110 Gang through, among other things, control of and participation in the distribution of controlled substances in 110 Gang territory and elsewhere;

      b.  Enriching the members of the 110 Gang through, among other things, the theft of credit card account information and the creation and use of counterfeit credit cards using that information;

      c.  Maintaining control over 110 Gang territory;

      d.  Preserving, protecting, and expanding the power and reputation of the 110 Gang through the use of intimidation, violence, threats of violence, robberies, assaults, murders and attempted murders;

      e.  Promoting and enhancing the prestige, reputation and position of the 110 Gang, with respect to rival criminal organizations; and

2

f.  Keeping victims and rivals in fear of the enterprise and its members and associates.

## MANNER AND MEANS OF THE ENTERPRISE

4.      The 110 Gang has been in operation for more than twenty years, operating within a multi-block area on the southwest side of the City of Syracuse, New York.  The borders are Tallman Street to the north, Onondaga Avenue to the west, Centennial Drive to the south and Lincoln Avenue to the east (the "110 Gang Territory"). 110 Gang members routinely guard that territory and resort to acts of violence, if necessary, to ensure that no rival gang members encroach upon their territory to sell drugs, or for any other reason.  110 Gang members also occasionally resort to violence within territory that is not directly related to their drug business, but helps to cement their reputation as violent and feared criminals.

5.      By controlling their specifically defined geographic area, the 110 Gang members have established, in effect, an exclusive territory within which only they can distribute their crack cocaine, heroin, and occasionally, other drugs.  If non-110 Gang members attempt to sell drugs within 110 territory, either on their own, or in conjunction with a rival gang, they will be confronted and likely attacked.  Additionally, any rival gang members who pass through their area, even if they are not selling or attempting to sell drugs, are subject to attacks to ensure that the territory remains firmly under 110 Gang control.

6.      Members of the 110 Gang make money primarily through selling drugs and through the use of counterfeit credit cards.

7.      110 Gang members use hand signs and wear the colors white and black to signify gang identity.

8.      110 Gang members, and those associated with them, use social media sites to glorify and perpetuate the 110 Gang.  These social media sites include photographs showing gang-

3

related photos and writings. 110 Gang members also record music videos and other song recordings with lyrics that glorify the 110 Gang, including the violence and drug dealing of its members.

9. 110 Gang members have perpetuated long-standing feuds and, at times, alliances with other street gangs such as BRICKTOWN, VNOT, UPTOWN, LAMA, BOOTCAMP, FURMAN FAST CASH, 1500 and PIONEER HOMES ("PH") gangs, through murders and attempted murders of members of the rival gangs.

10. 110 Gang members routinely arm themselves with firearms in order to protect their territory, to protect their drug trade, to project a violent attitude to rival gang members, and to retaliate against any rival gangs who committed acts of violence against fellow gang members. Many of these firearms become "community" guns, circulated among members of the 110 Gang. These 110 Gang guns are routinely used to shoot at rival gang members both within 110 Gang territory and elsewhere.

11. 110 Gang members commit acts of violence, including murder and assault, to instill fear of the gang and to protect and expand the gang's criminal operations.

## THE RACKETEERING CONSPIRACY

12. From at least 2012, and continuing thereafter up to the date of the indictment, in the Northern District of New York and elsewhere, the defendants **DAQUAN DOWDELL aka "CANNON," ANTHONY HOPPER, aka "A-DOG," JAVON PETERSON, aka "BLAZE," DAVON SULLIVAN, aka "LIL SQUEEZE," JAMAR LONG, aka "SPANKY," DESHAWNTE WALLER, SHAQUILLE BRELAND, aka "SHAQ," REDDELL SMITH, aka "RENNY," RASHAWN WYNN, aka "WORMY," QUALIK VAUGHN, aka "Q," TERRY LINEN, aka "SIX," JASON LEBRON, aka "RILLA," KEMNORRIS KINSEY, aka "PEP," DAMANI PRINCE** together with others known and unknown to the grand jury, being

4

persons employed by and associated with the enterprise known as the 110 Gang, described in paragraphs 1 through 11 of this Indictment, which enterprise engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally, did conspire to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United Sates Code, Sections 1961(1) and 1961(5), consisting of: (1) multiple acts involving murder, in violation of New York Penal Law Sections 125.25, 110.00, and 105.15; (2) multiple acts involving robbery, in violation of New York Penal Law Sections 160.15, 160.10, 160.05, 110.00, and 105.10; (3) multiple acts indictable under Title 18, United States Code, Section 1029 (relating to fraud and related activity in connection with access devices); and (4) multiple offenses involving selling and dealing in controlled substances, in violation of Title 21, United States Code, Sections 841 and 846.

13.    It was a part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

### OVERT ACTS

14.    On or about June 23, 2012, LONG and PRINCE travelled to a location in Syracuse, New York to acquire guns from another individual (Victim 1) who had stolen them in a burglary. PRINCE possessed one of the firearms. LONG stole two of the firearms from Victim 1. On June 24, 2012, Victim 1 and another individual came into 110 Gang territory to retrieve the guns and were shot by another 110 Gang member.

15.    On or about September 30, 2012, HOPPER shot and killed Victim 2 in front of a bar in 110 Territory.

16.    On or about January 3, 2013, LINEN possessed crack cocaine in 110 Gang territory with the intent to sell it.

5

17.     On or about April 7, 2013, LEBRON possessed crack cocaine, cash and scales in 110 Territory, and intended to sell the crack cocaine.

18.     On or about October 2, 2013, LEBRON was with SULLIVAN and possessed a quantity of methamphetamine and crack that he intended to sell.

19.     On or about February 26, 2014, VAUGHN possessed crack cocaine in 110 Territory, intending to sell it.

20.     On or about August 8, 2014, rival gang members shot in the direction of a 110 Gang member's party in 110 Gang Territory.   Several 110 Gang members, including HOPPER, DOWDELL, KINSEY and SULLIVAN met immediately after the shooting and agreed that they would try to retaliate against the rival gang with acts of violence.   KINSEY retrieved a gun and went with SULLIVAN and another 110 Gang member in a car looking for rival gang members with the intent to shoot any rival gang members they found.

21.     On or about August 9, 2014, HOPPER and another 110 Gang member went again to try to find rival gang member(s) to shoot in retaliation for the August 8 shooting in 110 Gang Territory.   KINSEY provided a car to HOPPER and another 110 Gang member knowing that HOPPER and the other 110 Gang member intended to drive around looking for rival gang members to shoot in retaliation.   HOPPER and the other 110 Gang member drove into rival gang territory and located rival gang members.   HOPPER gave a gun to the other 110 Gang member and directed the other 110 Gang member to shoot at the rival gang members, which the other 110 Gang member did.   As a result, two rival gang members suffered gunshot wounds, which required hospitalization.

22.     From in or about 2014 through in or about 2016, WALLER acquired and used stolen credit cards and shared stolen credit card information with other 110 Gang members.

23.     From in or about 2014 through in or about 2016, WALLER acquired crack cocaine on multiple occasions from another individual, which WALLER distributed to others.

24.     On or about October 24, 2014, LONG and HOPPER shot at and killed Victim 3. KINSEY had robbed Victim 3 of marijuana the night before.

25.     On or about January 26, 2015, VAUGHN sold crack cocaine in 110 Gang Territory.

26.     On or about February 18, 2015, VAUGHN possessed crack cocaine in 110 Gang Territory with the intent to sell it.

27.     On or about May 25, 2015, HOPPER possessed 20 glassine envelopes of heroin at a bar in 110 Gang Territory, which he intended to sell.

28.     On or about June 27, 2015, DOWDELL possessed counterfeit credit cards in 110 Gang Territory.

29.     On or about October 17, 2015, BRELAND was with other 110 Gang Members, including PETERSON, at a bar in Syracuse, NY when a fight broke out with rival gang members. BRELAND shot and injured one of the rival gang members.

30.     On or about November 23, 2015, PETERSON possessed a quantity of crack cocaine.

31.     On or about January 10, 2016, LONG was with SULLIVAN in 110 Gang Territory when SULLIVAN got into an argument with Victim 4.  LONG gave SULLIVAN a handgun, which SULLIVAN fired at Victim 4.

32.     On or about March 11, 2016, BRELAND possessed a .32 caliber handgun at a bar in 110 Gang Territory.

33.     On or about May 28, 2016, SULLIVAN possessed a .38 caliber revolver, which was previously used in 110 Gang Territory to shoot at two rival gang members.

34.    On or about June 5, 2016, PETERSON was with other 110 Gang members at a Syracuse area concert.  PETERSON got into an argument with a rival gang member outside the concert.  One of the other 110 Gang members with PETERSON shot at the rival gang member multiple times.

35.    On or about September 28, 2016, LONG possessed crack cocaine in 110 Gang Territory, with the intent to distribute it.

36.    On or about October 18, 2016, PETERSON possessed a 9 mm handgun.

37.    On or about February 19, 2017, BRELAND shot and injured three rival gang members outside a restaurant in Syracuse, New York.

38.    On or about July 4, 2017, SMITH attempted to stab a rival gang member at a shopping mall in Syracuse, New York.

39.    On or about August 12, 2017, DOWDELL possessed a quantity of crack cocaine in 110 Territory with the intent to distribute it.

40.    On or about September 1, 2017, LONG provided a gun to LINEN, which LINEN used to fire at another individual.

41.    From at least in or around September 2017 through and until at least in or around March 2018, WYNN sold crack cocaine on numerous occasions in 110 Gang Territory.

42.    On or about September 27, 2017, LONG possessed crack cocaine in 110 Gang Territory, which LONG intended to distribute.

43.    From at least in or around January 2017 until in or around May 2017, SMITH was supplied with crack cocaine by another individual, which SMITH then distributed to others in 110 Gang Territory.

44.     On or about December 10, 2017, SMITH was with other 110 Gang members at a Syracuse restaurant. SMITH got into a fight with other patrons at the restaurant and stabbed them.

45.     On or about January 11, 2018, BRELAND possessed equipment used to manufacture counterfeit credit cards.

46.     On or about February 26, 2018, LONG possessed crack cocaine in 110 Gang Territory and intended to distribute it.

47.     On or about March 2, 2018, VAUGHN supplied a quantity of crack cocaine to WYNN in 110 Territory, which WYNN then sold to another individual in 110 Gang Territory.

48.     In or about April 2018, HOPPER assisted another 110 Gang member in selling crack cocaine.

49.     On or about May 31, 2018, PRINCE was found in 110 Gang Territory with a quantity of crack cocaine that he intended to sell.

50.     On or about August 24, 2018, PRINCE sold an amount of crack cocaine to another individual in 110 Gang Territory.

51.     On or about August 29, 2018, KINSEY sold an amount of crack cocaine to another individual in 110 Gang Territory.

Dated:     October 25, 2018

A TRUE BILL,     **NAME REDACTED

Grand Jury Foreperson

GRANT C. JAQUITH
United States Attorney

By:

Nicolas Commandeur
Assistant United States Attorney
Bar Roll No. 518984

10